**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**
**www.flmb.uscourts.gov**

In re:

Chapter 13
Case No.: 3:24-bk-00091-JAF

**CARMEN RIVERA BAEZA,**

Debtor(s).

_____/

**S.N. SERVICING CORPORATION, AS SERVICER**
**FOR U.S. BANK TRUST NATIONAL ASSOCIATION, AS**
**TRUSTEE OF THE BUNGALOW SERIES IV TRUST'S MOTION**
**FOR PROSPECTIVE RELIEF FROM THE AUTOMATIC STAY**

Secured Creditor, **S.N. SERVICING CORPORATION, AS SERVICER FOR U.S.
BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE BUNGALOW
SERIES IV TRUST**, its successors and/or assigns (the "Secured Creditor"), by and through his
undersigned counsel and pursuant to 11 U.S.C. § 362(d) moves this Honorable Court to grant
relief from the automatic stay on a two-year prospective basis pursuant to section 11 U.S.C. §
362(d)(4) and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure, so as to complete
state court foreclosure proceedings through certificate of title, and possession with respect to
certain real property, more fully described below, and allow the state court to enter all necessary
orders, judgments and decrees associated therewith (the "Motion"). In support of the Motion, the
Movant respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and
1334.

2.      This matter is a core proceeding pursuant to 28 U.S.C § 157(b)(2)(G), as this Motion seeks to terminate the automatic stay.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1408.

## PROCEDURAL BACKGROUND - INSTANT BKCY CASE

4.      On January 11, 2024, the Debtor Carmen Rivera Baeza (the "Debtor") filed a Voluntary Petition [D.E. #1] for relief pursuant to Chapter 13 of the United States Bankruptcy Code, the Debtor's fifth bankruptcy case and the third bankruptcy case to stay Secured Creditor's foreclosure. This case was converted to a Chapter 7 case on January 19, 2024.

5.      The estimated total claim amount due to Secured Creditor is $327,561.61 (good through February 29, 2024). The loan is contractually due for the January 1, 2020 payment and all subsequent payments due thereafter.

6.      The Debtor did not claim the property as exempt on the Debtor's Schedule C. Moreover, pursuant to the Debtor's Statement of Intention [D.E. 14], the Debtor surrendered the property.

## BACKGROUND AND PATTERN
## OF MULTIPLE BANKRUPTCY FILINGS

7.      On February 6, 2007, the Debtor executed and delivered a Note to lender Fremont Investment & Loan, in the original principal amount of Two Hundred Twenty-Five Thousand, Five Hundred and 00/100 Dollars ($225,500.00) ("Note") for the purchase of the Property. The amount owed to Movant is secured by that certain mortgage of even date, recorded on February 23, 2007, as Doc # 2007-010497, in O.R. Book 1545, Page 763, in the Public Records of Flagler County, Florida, encumbering the Property as described in the mortgage then owned by and in

possession of the Debtor ("Mortgage").

8.      Movant is the holder of the Note and the Mortgage by virtue of those Allonges to Note and Assignment(s) of Mortgage attached to the Note and Mortgage. The Note, Mortgage, Allonges to Note and Assignment(s) of Mortgage constitute the Loan Documents (collectively, the "Loan Documents"). A true and correct copy of the Loan Documents are attached to this Motion as Composite **Exhibit "A, B, C** respectively."

9.      Between the period of December 28, 2017 and January 11, 2024, there has been a pattern of multiple bankruptcy filings filed by the Debtor with an apparent intent to frustrate Secured Creditor by thwarting the foreclosure proceeding with bankruptcy filings resulting in stays of said proceedings.

10.     On December 28, 2017, the Debtor filed a Voluntary Chapter 13 petition (the "1st BKCY") in the Middle District of Florida, Case No. 3:17-bk-04386-JAF.  The 1st BKCY case was dismissed on May 18, 2019 for failure to make plan payments.

11.     On June 20, 2019, the Debtor filed a Voluntary Chapter 13 petition (the "2nd BKCY") in the Middle District of Florida, Case No. 3:19-bk-02345-JAF.  The 2nd BKCY case was dismissed on April 17, 2020 due to a Voluntary Dismissal.

12.     On May 13, 2021, a foreclosure action was commenced against the Debtor as to the Property, in the Circuit Court of the 7th Judicial Circuit in & for Flagler County, Florida (*Case No. 2021-CA-000250, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST  V. CARMEN BAEZA, et. al.)* (the "Foreclosure Proceeding")]  as to the real property owned by the Debtor located at *31 EAST DIAMOND DR, PALM COAST, FL 32164*  (the "Property"), and the Property is more particularly described as:

**LOT 13, BLOCK 31, PALM COAST, MAP OF EASTHAMPTON, SECTION 34, ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 11, PAGES 30-49 OF THE PUBLIC RECORDS OF FLAGLER COUNTY, FLORIDA.**

13.     A true and correct copy of the Foreclosure docket is attached hereto as "**Exhibit D**".

14.     On October 7, 2021, the Circuit Court entered a Final Judgment of Foreclosure in the amount of $294,641.66 (the "Final Judgment") as to the Property.  Pursuant to the Final Judgment, the initial foreclosure sale took place on November 30, 2021.  A true and correct copy of the Final Judgment is attached hereto as "**Exhibit E**".

15.     On November 18, 2021, the Debtor filed a Voluntary Chapter 13 petition (the "3rd BKCY") in the Middle District of Florida, Case No. 3:21-bk-02720-JAF.  The Debtor proposed to cure the pre-petition arrearages and pay the post-petition payments through the plan. On December 3, 2022, the 3rd BKCY case was dismissed for failure to make plan payments. The foreclosure sale was rescheduled for March 3, 2023.

16.     On February 14, 2023, the Debtor filed a Voluntary Chapter 13 petition (the "4th BKCY") in the Middle District of Florida, Case No. 3:23-bk-00308-JAF.  The Debtor again proposed to cure the pre-petition arrearages and pay the post-petition payments through the plan. On December 1, 2023, the 4th BKCY case was also dismissed for failure to make plan payments. The foreclosure sale was rescheduled for March 8, 2024.

17.     On January 11, 2024, the Debtor filed the instant petition ("5th BCY") which again cancelled the foreclosure sale.

## BASIS FOR RELIEF REQUESTED

18.   All four of the Debtor's prior bankruptcy cases were unsuccessful in that the Debtor was not able to confirm a plan and they all resulted in dismissals.

19.   11 U.S.C. §362(d)(4)(B) provides:

> (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay

> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either

> A. transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

> B. multiple bankruptcy filings affecting such real property.

20.   Eleventh Circuit law provides further that the totality of the circumstances should be analyzed in determining whether a case should be dismissed for bad faith. *In re Kitchens,* 702 F.2d 885 (11th Cir. 1983).

21.   Here, the history and timing of the Debtor's multiple bankruptcy filings are continued efforts by the Debtor to further hinder and delay Secured Creditor's efforts to complete the foreclosure action in state court and as such reflect a pattern of bad faith filings.

22.   The Debtor has created a pattern of malfeasance and systematic abuse of the bankruptcy system. In light of the current case being the fifth bankruptcy case that has stayed the foreclosure, the Debtor's minimal effort in the prior bankruptcy cases, the Debtor's continued inability to maintain timely plan payments, and the Debtor filing the instant case to stop the foreclosure sale but, then "surrendering" the property, there is a clear unfair manipulation of the bankruptcy code to the prejudice of Secured Creditor.

23.     The timing of the multiple bankruptcy filings have resulted in multiple delays and has severely hindered Secured Creditor from moving forward with the foreclosure proceeding in a timely fashion.

24.     Hence, all of the Debtor's bankruptcy filings are part of a scheme to hinder and delay Secured Creditor and its foreclosure efforts, while the Debtor and unknown parties continue to enjoy the benefit of the Property.

25.     Accordingly, Secured Creditor is entitled to an Order prohibiting the automatic stay from affecting its ability to proceed with the foreclosure of the Property for a period of two years.

**WHEREFORE**, Secured Creditor respectfully requests that this Honorable Court enter an Order:

    a.  terminating the automatic stay in favor of Secured Creditor as to the Property in the instant case for a prospective period of two years;

    b.  permitting Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the Property described herein; and

    c.  granting any such other relief that the Court deems just and proper.

**Dated:  February 12, 2024.**

Respectfully submitted,

**GHIDOTT │ BERGER, LLP**
*Attorneys for Secured Creditor*
1031 North Miami Beach Blvd.
North Miami Beach, FL 33162
Telephone: (305) 501.2808
Facsimile: (954) 780.5578

By:  /s/ Melbalynn Fisher
        Melbalynn Fisher Esq.
        Florida Bar No. 107698
        mfisher@ghidottiberger.com

## CERTIFICATE OF SERVICE

On February 12, 2024, I served the foregoing document described as *Motion for Prospective Relief from the Automatic Stay* on the following individuals by electronic means through the Court's ECF program:

**John Roberts**
Attorney and Counselor at Law, PA
300 Interchange Blvd, Suite E
Ormond Beach, FL 32174

*Trustee*
**Douglas W Neway**
Post Office Box 4308
Jacksonville, FL 32201

*U.S. Trustee*
*Office of the US Trustee*
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

On February 12, 2024, I served the foregoing documents described as *Motion for Prospective Relief From the Automatic Stay* upon the following individuals by depositing true copies thereof in the United States mail at North Miami Beach, FL, enclosed in a sealed envelope, with postage paid, addressed as follows:

***Debtor***
Carmen R Baeza
31 E. Diamond Drive
Palm Coast, FL 321643

By: _____/s/ Melbalynn Fisher_____
                Melbalynn Fisher, Esq.

EXHIBIT "A"

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

February 06, 2007                    BREA                         CA    92821
[Date]                               [City]                       [State]

31 EAST DIAMOND DRIVE, PALM COAST, FL  32164

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 225,500.00 (this amount is called " Principal"), plus interest, to the order of the Lender. The Lender is Fremont Investment & Loan

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.700 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS ** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on  April 01, 2007 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  March 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  2727 East Imperial Highway, Brea, CA  92821

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,656.59 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index  - Single Family -Freddie Mac UNIFORM INSTRUMENT

VMP-815N (0404)                    Form 5520 3/04
VMP Mortgage Solutions (800)521-7291
Page 1 of 4                         Initials: GS

Original Note & Riders

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of March, 2010 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for six-month U.S. dollar-denominated deposit in the London market, as published in *The Wall Street Journal*. The most recent Index figure available 45 days first before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 328/1000 percentage point(s) ( 6.328 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 11.700 % or less than 8.700 %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than 1.500 % from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than 14.700 % or less than 8.700 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY ** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  **15**  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  **5.000**  % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

** SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **
** SEE BALLOON PAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF **

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.



_____ (Seal)          _____ (Seal)
CARMEN BAEZA                        -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                                            -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                                            -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                                            -Borrower                                                   -Borrower

*[Sign Original Only]*

IMAGED



Pay to the order of **Bayview Loan Servicing, LLC**
without recourse.



Fremont Investment & Loan
Doug Pollock
Assistant Vice President

IMAGED



# PREPAYMENT RIDER TO NOTE

THIS PREPAYMENT RIDER is made this 06th day of February, 2007, and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note ("Note") made by the undersigned (the "Borrower") to:

Fremont Investment & Loan

(the "lender") of the same date and covering the property located at:

31 EAST DIAMOND DRIVE, PALM COAST, FL  32164

(Property Address)

## BORROWER'S RIGHT TO PREPAY

### This Prepayment Rider Supersedes Section 5 of the Note

I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment".  When I make a prepayment, I will tell the Note Holder in a letter that I am doing so.  A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full or partial prepayment; however, the Note Holder may charge me for the privilege of prepayment.  If more than 20% of the original principal amount of this note is prepaid in any 12-month period within [ 3  Years ] after the date of this loan, I agree to pay a prepayment charge equal to six months interest on the amount prepaid which is in excess of 20% of the original principal amount of this Note. If I make prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes.  I may make full prepayment at any time.

| | |
|---|---|
| _Carmen Baeza_    3/6/07 | _____ |
| CARMEN BAEZA    Date | Date |
| _____ | _____ |
| Date | Date |
| _____ | _____ |
| Date | Date |
| _____ | _____ |
| Date | Date |

MSPPY1  10/11/2005

## Balloon Payment Rider to Note
### (Adjustable Rate)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE UNPAID PRINCIPAL BALANCE OF THE LOAN, TOGETHER WITH ALL UNPAID INTEREST AND LOAN CHARGES THEN DUE, IN A SINGLE BALLOON PAYMENT. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THIS LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY HIGHER INTEREST RATES ON THE NEW LOAN THAN THE INTEREST RATE PAID ON THIS LOAN. FURTHER, IF YOU REFINANCE, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

THIS BALLOON PAYMENT RIDER TO NOTE (the "Note Rider") is made this  06th  day of February, 2007  , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") made by the undersigned (the "Borrower") in favor of  Fremont Investment & Loan    (the "Lender") and dated the same date as this Note Rider.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    **Payments**

Sections 3 and 4 of the Note are modified, amended and supplemented to read, in their entirety, as follows:

"3.    **PAYMENTS**
     (A)  **Time and Place of Payments**
          I will pay principal and interest by making a payment every month.
          I will make my monthly payment on the first day of each month beginning on 04/01/2007  . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. On  March 01, 2037  (which is called the "Maturity Date"), I will pay the entire unpaid Principal balance of this Note, together with all accrued and unpaid interest and all charges due under this Note, in a single payment (the "Balloon Payment"). I understand and acknowledge that the Balloon Payment due on the Maturity Date will be much larger than a regular monthly payment and that the Note Holder has no obligation to refinance the Balloon Payment.

          I will make my monthly payments at 2727 East Imperial Highway, Brea, CA 92821  or at a different place if required by the Note Holder.

     (B)  **Amount of Monthly Payments**
          Each of my initial monthly payments will be in the amount of U.S. $  1,656.59 . This amount may change.

     (C)  **Monthly Payment Changes**
          Changes in my monthly payment will reflect changes in the unpaid Principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4.    **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
     (A)  **Change Dates**
          The interest rate I will pay may change on the first day of  March, 2010 , and may change on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

     (B)  **The Index**
          Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the six month London Interbank Offered Rate ("LIBOR"), which is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market, as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index."
          If the Index is no longer available, the Note Holder will choose a new index and adjust the Margin described below. The Note Holder will give me notice of these changes.

(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and 328/1000 percentage point(s) ( 6.328 %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on 3/1/2057 at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) **Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.700 % or less than 8.700 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and 500/1000 percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. In any event, my interest rate will never be greater than 14.700 % and will never be less than 8.700 %.

(E) **Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) **Notice of Changes**

The Note Holder will deliver or mail to me such notice of any changes in my interest rate and monthly payment as may be required by law. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice. "

2. **Uniform Secured Note**

Section 11 of the Note is modified, amended and supplemented to read, in its entirety, as follows:

"11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) **UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) **AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

BALARMN2  9/1/2005



contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower. "

**5.    Effect of Note Rider**

This Note Rider modifies, amends and supplements the Note. To the extent of any inconsistency between the provisions of this Note Rider and the provisions of the Note, the provisions of this Note Rider shall prevail over and supersede the inconsistent provisions of the Note. Except as modified, amended or supplemented by this Note Rider, the Note shall remain in full force and effect.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Payment Rider to Note.

_____ (Seal)
CARMEN BAEZA                     - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

[Sign Original Only]

BALARMN3  9/1/2005

LOAN#

BV#

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: CARMEN BAEZA,

ORIGINAL PRINCIPAL BALANCE: $ 225,500

PROPERTY ADDRESS: 31 E DIAMOND DR, PALM COAST, FL 32164

PAY TO THE ORDER OF:
**BAYVIEW DISPOSITIONS IVa, LLC**

WITHOUT RECOURSE
**BAYVIEW LOAN SERVICING, LLC**

BY: _____

NAME: JASON JAMES
TITLE: Assistant Vice-President

LOAN#

BV#

ALLONGE TO NOTE

FOR PURPOSES OF FURTHER ENDORSEMENT OF THE NOTE REFERRED TO BELOW:

BORROWER: CARMEN BAEZA,

ORIGINAL PRINCIPAL BALANCE: $ 225,500

PROPERTY ADDRESS: 31 E DIAMOND DR, PALM COAST, FL 32164

PAY TO THE ORDER OF:
**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS
TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST SERIES 2015-1**

WITHOUT RECOURSE
**BAYVIEW DISPOSITIONS IVa, LLC**

BY: _____

NAME: ROBERT G. HALL
TITLE: Vice-President

## AMENDED AND RESTATED PROMISSORY NOTE

$261,848.00

Palm Coast, Florida

Dated: March 23rd, 2016
Effective Date: March 1, 2016

FOR VALUE RECEIVED the undersigned, **CARMEN BAEZA** (hereinafter referred to as "Maker"), promises to pay to the order of **WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST SERIES 2015-1** (hereinafter referred to as the "Lender"), at FCI Lender Services, Inc., 8180 E. Kaiser Boulevard, Anaheim, CA 92808, or such other place as the holder hereof may from time to time designate in writing, the principal sum of TWO HUNDRED SIXTY-ONE THOUSAND EIGHT HUNDRED FORTY-EIGHT and 00/100 ($261,848.00) or so much thereof as may have been disbursed, with interest thereon from the date or dates of disbursement of the aforesaid principal sum as hereafter provided, to be paid in lawful money of the United States of America, which shall be the legal tender in payment of all debts and dues, public and private, at the time of payment.

Monthly payments of principal and interest in the amount of $1,334.30 shall be due and payable commencing on the 1st day of April 2016 and continuing on the 1st day of each successive month until April 1, 2046 (the Maturity Date) at which time the entire unpaid principal balance and any unpaid and accrued interest shall become due and payable in full. Interest payments hereunder are computed based upon a fixed ratio of 5.50% per annum.

This is an Amended and Restated Promissory Note (the "Note") with respect to that particular Adjustable Rate Note dated February 6, 2007 and executed and delivered by Maker to Fremont Investment & Loan (the original lender). All governmental intangible taxes have been paid to the State of Florida at the origination of the February 6, 2007 loan transaction.

This Note is secured by that particular Mortgage dated February 6, 2007 recorded on February 23, 2007 in Official Records Book 1545 at Page 763 of the Public Records of Flagler County, Florida encumbering and conveying (the "Mortgaged Property") therein described.

Provided that Maker is not in default under the terms of this Amended and Restated Promissory Note, the principal balance due shall be reduced by the sum of $13,424.00 on April 1, 2017, with a further principal reduction of $13,424.00 on April 1, 2018.

Maker may make prepayment(s) hereunder at any time and from time to time without premium or penalty provided, however, that any partial prepayment shall be applied first to any unpaid and accrued interest or other charges due and owing by Maker. Thereafter, the balance shall be applied to reduction of principal.

It is agreed hereby that if any payment of the principal and interest sum above mentioned, or any installment thereof, not be made within ten (10) days after same becomes due and payable as above provided; or if default be made in the performance of or compliance with any of the covenants and conditions of the Mortgage securing this Note; or in the event default be made in the performance or compliance with any of the covenants and conditions of any security agreement now or hereafter in effect securing payment of this Note; or upon any default in the payment of any sum due by Maker to Lender under any other promissory note, security instrument or other written obligation of any kind now existing or hereafter created; or upon the death, insolvency, bankruptcy or dissolution of the Maker hereof; then, in any or all such events, the entire amount of principal of this Note with all interest then accrued, shall, at the option of the holder of this Note and without notice (the Maker hereby expressly waives notice of such default), become and be due and collectible, time being of the essence of this Note. If this Note shall not be paid at maturity or according to the tenor thereof and strictly as above provided, it may be placed in the hands of an attorney at law for collection, and in that event, each party liable for the payment thereof, as Maker, endorser, guarantor, or otherwise, hereby agrees to pay the holder hereof in addition to the sums above stated, a reasonable sum as an attorney's fee including sales tax thereon, if any, which shall include attorney's fees at the trial level and on appeal, together with all reasonable costs incurred. After maturity or default, this Note shall bear interest at the highest rate permitted under then applicable law, provided, however, in the event there is then no such highest rate applicable, or in the event said highest rate is otherwise indeterminable, the parties agree that the applicable rate shall be eighteen (18%) percent per annum, further provided, however, in no event shall such rate exceed the highest rate permissible under the applicable law.

Provided the Lender has not exercised its right to accelerate this Note as hereinabove provided, or in the event any required payment on this Note is not received by Lender within ten (10) days after said payment is due, Maker shall pay Lender a late charge of five percent (5%) percent of the payment not so received, the parties agreeing that said charge is a fair and reasonable charge for the late payment and shall not be deemed a penalty. As to this Note, Mortgage and any other instruments securing the indebtedness, the Maker, endorsers and guarantors severally waive all applicable exemption rights, whether under the State Constitution, Homestead Laws or otherwise, and also severally waive valuation and appraisement, presentment, protest and demand, notice of protest, demand and dishonor and nonpayment of this Note, and expressly agree that the Maturity Date of this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Maker, endorsers or guarantors.

Nothing herein contained, nor in any instrument or transaction related hereto, shall be construed or so operate as to require the Maker, or any person liable for the payment of the loan made pursuant to this Note, to pay interest in an amount or at a rate greater than the highest rate permissible under applicable law. Should any interest or other charges paid by the Maker, or any parties liable for the payment of the loan made pursuant to this Note, result in the computation or earning of interest in excess of the highest rate permissible under applicable law, then any and all such excess shall be and the same is

hereby waived by the holder hereof, and all such excess shall be automatically credited against and in reduction of the principal balance, and any portion of said excess which exceeds the principal balance shall be paid by the holder hereof to the Maker and any parties liable for the payment of the loan made pursuant to this Note, it being the intent of the parties hereto that under no circumstances shall the Maker, or any parties liable for the payment of the loan hereunder, be required to pay interest in excess of the highest rate permissible under applicable law.

WAIVER OF JURY TRIAL.   MAKER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY AND ALL RIGHT SHE MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION (INCLUDING BUT NOT LIMITED TO ANY CLAIMS, CROSS-CLAIMS, OR THIRD PARTY CLAIMS) ARISING OUT OF, UNDER, OR IN CONNECTION WITH THIS NOTE, THE OTHER LOAN DOCUMENTS, OR THE TRANSACTIONS CONTEMPLATED HEREIN. MAKER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION.   MAKER ACKNOWLEDGES THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS LOAN, INCLUDING THIS NOTE, BY, INTER ALIA, THE PROVISIONS OF THIS PARAGRAPH.

This Note is to be construed according to the applicable laws of the State of Florida and the United States of America.

CARMEN BAEZA

# ALLONGE TO NOTE

Servicer Number:

Borrower: BAEZA, CARMEN

Property Address: 31 E DIAMOND DR, PALM COAST, FL 32164

Note Date: 2/6/2007

Original Lender: Freemont Investment & Loan

Note Amount: $225500

PAY TO THE ORDER OF:

WITHOUT RECOURSE

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST 2015-1**

By:    AMIP Management, LLC
       Trust Administrator

       By: _____
       Name: Ron McMahan
       Title:  CEO

EXHIBIT "B"

~~Return To:~~

Fremont Investment & Loan
P.O. BOX 34078
FULLERTON, CA 92834-34078

This document was prepared by:

Barbara Licon

---

[Space Above This Line For Recording Data]

RETURN TO:
EASY TITLE SERVICES
25400 US 19 N #259
CLEARWATER, FL 33763
FILE #:

R

# MORTGAGE   MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated February 06, 2007,
together with all Riders to this document.
**(B) "Borrower"** is CARMEN BAEZA, unmarried

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee
under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is Fremont Investment & Loan

---

FLORIDA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

VMP -6A(FL) (0005).02
Page 1 of 16                    Initials: _CB_
VMP MORTGAGE FORMS - (800)521-7291

Lender is a    CORPORATION
organized and existing under the laws of    CALIFORNIA
Lender's address is 2727 East Imperial Highway, Brea, CA  92821

(E) "Note" means the promissory note signed by Borrower and dated February 06, 2007
The Note states that Borrower owes Lender Two Hundred Twenty-Five Thousand Five
Hundred  and 0/100ths                                                    Dollars
(U.S. $225,500.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than March 01, 2037          .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [X] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005).02                    Page 2 of 16          Initials: _GP_          Form 3010  1/01

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the County        [Type of Recording Jurisdiction]
of Flagler                                                                  [Name of Recording Jurisdiction]:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.



Parcel ID Number:                                                        which currently has the address of
11 EAST ELARDO DRIVE                                                                            [Street]
PALM COAST                                              Palm Florida  32164                    [City], [Zip Code]
[Property Address]:

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

                         

FCC RD

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment

can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest



shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** [text redacted/illegible] ...

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under [remainder of section redacted/illegible]




Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the

amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of



any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers

unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the

purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

 

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its**

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____        _____ (Seal)
                                          CARMEN BAEZA                       -Borrower
                                          31 East Diamond Dr
                                          Palm Coast, FL 32164

                                                                             (Address)

_____        _____ (Seal)
                                                                             -Borrower


                                                                             (Address)

_____ (Seal)  _____ (Seal)
                                 -Borrower                                    -Borrower


                             (Address)                                       (Address)

_____ (Seal)  _____ (Seal)
                                 -Borrower                                    -Borrower


                             (Address)                                       (Address)

_____ (Seal)  _____ (Seal)
                                 -Borrower                                    -Borrower


                             (Address)                                       (Address)

STATE OF FLORIDA,
The foregoing instrument was acknowledged before me this *Flagler* _Feb_ _6, 2007_ County ss:    by

Carmen Baza

who is personally known to me or who has produced _driver license_    as identification.'

Notary Public

LESLENE LUE
Notary Public - State of Florida
My Commission Expires Jan 11, 2010
Commission # DD 505988
Bonded By National Notary Assn.

FCC RD

Initials: _GB_

-6A(FL) (0005).02    Page 16 of 16    Form 3010  1/01

EXHIBIT "C"

Recording Requested By:
RICHMOND MONROE GROUP, INC.

When Recorded Return To:
BVPALISADES
RICHMOND MONROE GROUP, INC.
P.O.B OX 458
KIMBERLING CITY, MO  65686

---

### CORPORATE ASSIGNMENT OF MORTGAGE

Flagler, Florida   REFERENCE #:          "BAEZA"
INVESTOR #:
MERS #:

Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT
INVESTMENT & LOAN, ITS SUCCESSORS AND ASSIGNS at P.O. BOX 2026,FL INT, MI  48501-2026.
Assignee: BAYVIEW LOAN SERVICING, LLC  at  4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES,
FL  33146.
Executed By: CARMEN BAEZA, UNMARRIED  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND ASSIGNS .
Date of Mortgage: 02/06/2007 Recorded:  02/23/2007  in Book/Reel/Liber: 1545 Page/Folio:7 63 as Instrument No.:
2007010497  in Flagler County , State of Florida.

Property Address: 31 EAST DIAMOND DRIVE, PALM COAST, FL 32164

   KNOW ALL MEN BY THESE PRESENTS thatin  consideration of the sum of TEN and NO/100ths DOLLARS and
other good and valuable consideration, paid to the above named Assignor, the receipt and sufficiency ofw hich is
hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having
an original principal sum of $225,500.00 with interest, secured thereby, together with all moneys now owing or that
may hereafter become due or owing in respect thereof, and the full benefit ofa ll the powers and of all the covenants
and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the
Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and also the said property unto the said Assignee forever, subject to
the terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT INVESTMENT &
LOAN, ITS SUCCESSORS AND ASSIGNS
On __4/4/16__

By: _____
   Robert G. Hall _____ (Print Name)
Title: ____Vice President

WITNESS                                    WITNESS
_____              _____
   Maria Isabel Puerto                      Meredith Mieres

**Florida**
STATE OF **Miami-Dade**
COUNTY OF _____

On __4/4/16__, before me, __Rogelio A. Portal__, a Notary Public in and for
__Miami-Dade__ in the State of __FL__, personally appeared __Robert G. Hall__, (Print
Name)  Title: __VP__ p ersonally known to me (or proved to me on the basis ofs atisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity, and thatb y his/her/their signature on the
instrument the person(s), or the entity upon behalf ofw hich the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Notary Expires:___/ /

ROGELIO A. PORTAL
MY COMMISSION # EE 197169
EXPIRES: August 25, 2016
Bonded Thru Notary Public Underwriters

                                        (This area for notarial seal)

Prepared By:      ASHLEY WARREN,   RICHMOND MONROE GROUP P.O. BOX 458, KIMBERLING CITY, MO   65686
417-447-2931

*JMB*JMHAM'RC*03/15/2016 04:03:00 PM* AMRC\HAMRC000000000000000856179* FLFLAGL* 001090096A FLSTATE_MORT_ASSIGN_ASSN *JMB*JMHAMRC*

Recording Requested By:
AMIP MANAGEMENT, INC.

When Recorded Return To:

TAUANE HORTON
AMIP MANAGEMENT, INC.
2999 WESTMINSTER AVENUE.
SUITE 265
SEAL BEACH, CA 90740

---

## RECORD 2ⁿᵈ 1ˢᵗ

### CORPORATE ASSIGNMENT OF MORTGAGE

Flagler, Florida
SELLER'S SERVICING #:            "BAEZA"

Date of Assignment: April 5th, 2016
Assignor: BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY at 4425 PONCE DE LEON BLVD, SUITE # 400, CORAL GABLES, FL 33146
Assignee: BAYVIEW DISPOSITIONS IVA, LLC at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL 33146
Executed By: CARMEN BAEZA, UNMARRIED  To: FREMONT INVESTMENT & LOAN
Date of Mortgage: 02/06/2007 Recorded: 02/23/2007 in Book/Reel/Liber: 1545 Page/Folio: 763 as Instrument No.: 2007010497 In the County of Flagler, State of Florida.

Property Address: 31 EAST DIAMOND DRIVE, PALM COAST, FL 32164

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $225,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

BAYVIEW LOAN SERVICING, LLC, A DELAWARE LIMITED LIABILITY COMPANY
On APR 0 6 2016

By: _____
ROBERT G. HALL, Vice-President


STATE OF Florida
COUNTY OF Miami-Dade

The foregoing instrument was acknowledged and sworn to and subscribed before me this APR 0 6 2016   by ROBERT G. HALL , Vice-President on behalf of the corporation.

PERSONALLY KNOWN _____ OR PRODUCED INDENTIFICATION _____ TYPE OF IDENTIFICATION PRODUCED _____

WITNESS my hand and official seal.

_____
CECILIA MERCED-PACHECO
Notary Expires: 06/28/2016  #EE 212793

| CECILIA MERCED-PACHECO |
| MY COMMISSION # EE 212793 |
| EXPIRES: June 28, 2016 |
| Bonded Thru Notary Public Underwriters |

(This area for notarial seal)

Prepared By:  Jamie De Los Santos,  BAYVIEW LOAN SERVICING, LLC. 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL 33146

*JH*JMBAYV*04/05/2016 05:59:06 PM* BAYV01BAYVA00000000000000457662* FLFLAGL* 0019C0096B FLSTATE_MORT_ASSIGN_ASSN **JXRBAYV*

Recording Requested By:
AMIP MANAGEMENT, INC.

When Recorded Return To:

TAUANE HORTON
AMIP MANAGEMENT, INC.
2999 WESTMINSTER AVENUE,
SUITE 265
SEAL BEACH, CA 90740

---

Flagler, Florida
## CORPORATE ASSIGNMENT OF MORTGAGE       **RECORD**

SELLER'S SERVICING #:        "BAEZA"

Date of Assignment: April 5th, 2016
Assignor: BAYVIEW DISPOSITIONS IVA, LLC at 4425 PONCE DE LEON BLVD, 5TH FLOOR, CORAL GABLES, FL 33146
Assignee: WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST SERIES 2015-1 at 2999 WESTMINSTER AVENUE, SUITE 265, SEAL BEACH, CA 90740
Executed By: CARMEN BAEZA, UNMARRIED  To: FREMONT INVESTMENT & LOAN
Date of Mortgage: 02/06/2007 Recorded: 02/23/2007 In Book/Reel/Liber: 1545 Page/Folio: 763 as Instrument No.: 2007010497 In the County of Flagler, State of Florida.

Property Address: 31 EAST DIAMOND DRIVE, PALM COAST, FL 32164

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $225,500.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

BAYVIEW DISPOSITIONS IVA, LLC
On ____APR 0 6 2016____

By _____
ROBERT G. HALL, Vice-President

STATE OF Florida
COUNTY OF Miami-Dade

The foregoing instrument was acknowledged and sworn to and subscribed before me this APR 0 6 2016 by
ROBERT G. HALL , Vice-President, on behalf of the corporation.

PERSONALLY KNOWN _____ OR PRODUCED INDENTIFICATION _____TYPE OF IDENTIFICATION
PRODUCED _____

WITNESS my hand and official seal,

_____
CECILIA MERCED-PACHECO
Notary Expires: 06/28/2016 #EE

CECILIA MERCED-PACHECO
MY COMMISSION # EE 212793
EXPIRES: June 28, 2016
Bonded Thru Notary Public Underwriters

(This area for notarial seal)

Prepared By: Jamie De Los Santos,  BAYVIEW LOAN SERVICING, LLC. 4425 PONCE DE LEON BLVD., 5TH FLOOR, CORAL GABLES, FL  33146

*JH*JMBAYV*04/05/2016 05:59:07 PM* BAYV01BAYVA0000000000000000457663* FLFLAGL* 001090096C FLSTATE_MORT_ASSIGN_ASSN *JXRBAYV*

Recording Requested By/Return To:
AMIP Management
Attn: Dena Noble
3020 Old Ranch Pkwy #180
Seal Beach, CA 90740

Servicer Ln #

## ASSIGNMENT OF MORTGAGE

For value received, WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST SERIES 2015-1 (herein "Assignor") whose address is 3020 OLD RANCH PARKWAY, STE 180, SEAL BEACH, CA 90740, does hereby grant, sell, assign, transfer and convey, the described MORTGAGE, all liens and any rights due or to become due thereon to WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST III, (herein "Assignee"), whose address is 3020 OLD RANCH PARKWAY, STE 180, SEAL BEACH, CA 90740, together with the note(s) and obligations therein described and the money due and to become due thereon with interest, and all rights accrued or to accrue under such mortgage.

CLOSED END MORTGAGE FROM CARMEN BAEZA, UNMARRIED, TO MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR FREMONT INVESTMENT AND LOAN, AMOUNTING TO $225,500.00, DATED 02/06/2007 FILED FOR RECORD 02/23/2007, AND RECORDED IN BOOK 1545 PAGE 763 IN, INST# 2007010497 IN FLAGLER COUNTY RECORDS, STATE OF FLORIDA.

Property Address: 31 EAST DIAMOND DRIVE, PALM COAST, FL 32164

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of mortgage on _August 29_, 2018.

WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST SERIES 2015-1
By AMIP Management, LLC, its Administrator

By: _____
Ron McMahan
CEO

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange

On _8/29/18_ before me, __Dena Rae Noble__, the undersigned Notary Public, personally appeared Ron McMahan who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____
, Notary Public

DENA RAE NOBLE
Commission # 2104684
Notary Public - California
Orange County
My Comm. Expires Mar 26, 2019

Prepared by: Valya Fisher, AMIP Management, 3020 Old Ranch Pkwy, #180, Seal Beach, CA 90740 562-735-6555

Florida

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

_____ Space above for Recorder's use _____
Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST III**, whose address is **3020 OLD RANCH PARKWAY SUITE 180, SEAL BEACH, CA 90740**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **2/6/2007**
Original Loan Amount: **$225,500.00**
Executed by (Borrower(s)): **CARMEN BAEZA**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume **1545**, Page **763**
Document/Instrument No: **2007010497** in the Recording District of **Flagler, FL**, Recorded on **2/23/2007**.

Property more commonly described as: **31 EAST DIAMOND DRIVE, PALM COAST, FLORIDA 32164**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: _____ AUG 1 7 2020 _____

**WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST III, BY AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC, ITS ATTORNEY-IN-FACT**

By: **DENA R NOBLE**
Title: **VP, COLLATERAL MANAGEMENT**

Witness Name: _____
A. Hilke

Witness Name: _____
A. Fuentes

---

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

---

State of
County of _____

On _____, before me, _____, a Notary Public, personally appeared **DENA R NOBLE, VP, COLLATERAL MANAGEMENT** of/for **AMERICAN MORTGAGE INVESTMENT PARTNERS MANAGEMENT, LLC, AS ATTORNEY-IN-FACT FOR WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST AS OWNER TRUSTEE OF THE RESIDENTIAL CREDIT OPPORTUNITIES TRUST III**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of  that the foregoing paragraph is true and correct. I further certify DENA R NOBLE, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): _____

My commission expires:

ACKNOWLEDGED OUTSIDE THE STATE OF NEW YORK

> *A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.*

State of California
County of Orange

On 8/17/2020  before me, Valya Fisher,  the undersigned Notary Public, personally appeared Dena Noble who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person or the entity upon behalf of which the person acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature_____
             Valya Fisher, Notary Public

VALYA FISHER
Notary Public - California
Orange County
Commission # 2283516
My Comm. Expires Mar 29, 2023

Prepared By and Return To:

Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

Space above for Recorder's use _____

Loan No:

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNOR), does hereby grant, assign and transfer to **US BANK TRUST N.A., AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST**, whose address is **7114 E. STETSON DR., SUITE 250, SCOTTSDALE, ARIZONA 85251**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: **2/6/2007**
Original Loan Amount: **$225,500.00**
Executed by (Borrower(s)): **CARMEN BAEZA**
Original Lender: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR FREMONT INVESTMENT & LOAN, ITS SUCCESSORS AND ASSIGNS**
Filed of Record: In Book/Liber/Volume 1545, Page 763
Document/Instrument No: 2007010497 in the Recording District of **Flagler, FL**, Recorded on **2/23/2007**.

Property more commonly described as: **31 EAST DIAMOND DRIVE, PALM COAST, FLORIDA 32164**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: **9/11/2020**

**US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST, BY MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT**

By: **MURAT DENIZ**
Title: **VICE PRESIDENT**

Witness Name: **TIFFANY ALMEYDA**

Witness Name: **LISA HARRIS**

> A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of     **PINELLAS**

On **9/11/2020**, before me, **BRIANNA DAVIAU**, a Notary Public, personally appeared **MURAT DENIZ, VICE PRESIDENT** of/for **MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF THE IGLOO SERIES IV TRUST**, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of **FLORIDA** that the foregoing paragraph is true and correct. I further certify the foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization and that MURAT DENIZ, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.

_____

(Notary Name): **BRIANNA DAVIAU**

My commission expires: **05/20/2024**

Brianna Daviau
Notary Public
State of Florida
Comm#
Expires 5/20/2024

# EXHIBIT "D"

**2021 CA 000250 - US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF T vs. BAEZA, CARMEN**

## SUMMARY

| | | |
|---|---|---|
| **Judge:** | **Court Type:** | **Case Type:** |
| FRANCE, CHRISTOPHER A | Circuit Civil | Real Prop/mort Foreclosure - Homestead, Residential $50 - 249k |
| **Case Number:** | **Uniform Case Number:** | **Status:** |
| 2021 CA 000250 | 182021CA000250XXXXXX | CLOSED |
| **Clerk File Date:** | **Status Date:** | **Waive Speedy Trial:** |
| 5/13/2021 | 1/10/2024 | ☐ |
| **Total Fees Due:** | **Custody Location:** | **Agency:** |
| 0.00 | | |
| **Agency Report Number:** | | **Foreclosure:** |
| | | RECLOSED - 1/10/2024 |

## PARTIES

| TYPE | PARTY NAME | ADDRESS | ATTORNEY |
|---|---|---|---|
| PLAINTIFF | US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF T | 1031 NORTH MIAMI BEACH BLVD NORTH MIAMI BEACH, FL 33162 | DUGGAR, JASON L (Main Attorney) |
| DEFENDANT | BAEZA, CARMEN | 31 EAST DIAMOND DRIVE PALM COAST, FL 32164 | ROBERTS, JOHN |
| DEFENDANT | UNKNOWN SPOUSE OF CARMEN BAEZA   **(DISMISSED BEFORE HEARING - 7/15/2021)** | 31 EAST DIAMOND DRIVE PALM COAST, FL 32164 | |
| DEFENDANT | UNKNOWN TENANT 1 | 31 EAST DIAMOND DRIVE PALM COAST, FL 32164 | |
| DEFENDANT | UNKNOWN TENANT 2 | 31 EAST DIAMOND DRIVE PALM COAST, FL 32164 | |
| DEFENDANT | ITT COMMUNITY DEVELOPMENT CORPORATION | 1200 SOUTH PINE ISLAND ROAD PLANTATION, FL 33324 | |

## PARTY DISPOSITIONS

| PARTY NAME | CLAIM DATE | CLAIM AMOUNT | DISPOSITION | DISPOSITION DATE |
|---|---|---|---|---|
| BAEZA, CARMEN | | 0.0000 | | |
| ITT COMMUNITY DEVELOPMENT CORPORATION | | 0.0000 | | |
| UNKNOWN SPOUSE OF CARMEN BAEZA | | 0.0000 | DISMISSED BEFORE HEARING | 07//15//2021 10:02 |
| UNKNOWN TENANT 1 | | 0.0000 | | |
| UNKNOWN TENANT 2 | | 0.0000 | | |
| US BANK TRUST NATIONAL ASSOCIATION AS TRUSTEE OF T | | 0.0000 | | |

## EVENTS

| DATE | EVENT | JUDGE | LOCATION | RESULT |
|---|---|---|---|---|
| 3/8/2024 11:00 AM | FORECLOSURE SALE | FORECLOSURE SALE | Electronic Auction | CANCELLED |
| 1/10/2024 8:30 AM | Expedited Hearing | FRANCE, CHRISTOPHER A | Courtroom 403 | CANCELLED |
| 3/3/2023 11:00 AM | FORECLOSURE SALE | FORECLOSURE SALE | Electronic Auction | CANCELLED |
| 11/30/2021 11:00 AM | FORECLOSURE SALE | FORECLOSURE SALE | Judge's Chambers | CANCELLED |
| 10/6/2021 9:00 AM | Foreclosure Hearing | PERKINS, TERENCE | Courtroom 401 | HELD |
| 9/1/2021 10:00 AM | Foreclosure Hearing | PERKINS, TERENCE | Courtroom 401 | HELD |
| 7/15/2021 3:45 PM | PASS | PERKINS, TERENCE | Courtroom 401 | CANCELLED |

## COMPLIANCES

| TYPE | REQUIRED BY | COMPLETE | COMPLETE DATE |
|---|---|---|---|
| | | No Compliances on Case | |

## OUTSTANDING AMOUNT

| COUNT | CODE | DESCRIPTION | ASSESSMENT | PAID | WAIVED | BALANCE | PAYMENT PLAN / JUDGMENT | DUE DATE |
|---|---|---|---|---|---|---|---|---|
| 1 | HMSTRF2 | HMSTRF $50,001 BUT LESS THAN $250,000 | $905.00 | $905.00 | $0.00 | $0.00 | | |
| | | | | | Total Outstanding: | $0.00 | | |
| 1 | LISPEND1-EPORTAL | LIS PENDENS DEPOSIT - FROM EPORTAL | $5.00 | $5.00 | $0.00 | $0.00 | | |
| 2 | LISPEND1-EPORTAL | LIS PENDENS DEPOSIT - FROM EPORTAL | $4.00 | $4.00 | $0.00 | $0.00 | | |
| 3 | CA3 | CIRCUIT CIVIL FILING FEES (SUMMONS) | $10.00 | $10.00 | $0.00 | $0.00 | | |
| 4 | CA3 | CIRCUIT CIVIL FILING FEES (SUMMONS) | $10.00 | $10.00 | $0.00 | $0.00 | | |
| 5 | CA3 | CIRCUIT CIVIL FILING FEES (SUMMONS) | $10.00 | $10.00 | $0.00 | $0.00 | | |
| 6 | CA3 | CIRCUIT CIVIL FILING FEES (SUMMONS) | $10.00 | $10.00 | $0.00 | $0.00 | | |

| COUNT | CODE | DESCRIPTION | ASSESSED AMOUNT | COLLECTED AMOUNT | BALANCE | AMOUNT TO JUDGMENT | DUE DATE |
|---|---|---|---|---|---|---|---|
| 7 | CA3 | CIRCUIT CIVIL FILING FEES (SUMMONS) | $10.00 | $10.00 | $0.00 | $0.00 | |
| 8 | CAREOP | CIRC CIV REOPEN FILING FEE | $50.00 | $50.00 | $0.00 | $0.00 | |
| 9 | EAFEE | Electronic Auction Fee for Foreclosures | $59.00 | $59.00 | $0.00 | $0.00 | |
| 10 | CAREOP | CIRC CIV REOPEN FILING FEE | $50.00 | $50.00 | $0.00 | $0.00 | |
| | | | | Total Outstanding: | $0.00 | | |

## RECEIPTS

| DATE | RECEIPT # | APPLIED AMOUNT |
|---|---|---|
| 12/14/2023 | 2023023218 | $50.00 |
| 2/2/2023 | 2023001959 | $59.00 |
| 1/11/2023 | 2023000577 | $50.00 |
| 5/14/2021 | 2021007864 | $964.00 |

## CASE DOCKETS

| SEQ# | IMAGE | DATE | ENTRY |
|---|---|---|---|
| 69 | 1 | 1/12/2024 | ORDER OF STAY DUE TO BANKRUPTCY |
| 68 | 3 | 1/11/2024 | SUGGESTION OF BANKRUPTCY |
| 67 | 5 | 1/10/2024 | CERTIFICATE OF MAILING ORDER |
| 66 | | 1/10/2024 | FORECLOSURE SALE SET FOR 03/08/2024 AT 11:00 AM IN EA/ |
| 65 | 2 | 1/9/2024 | NOTICE OF CANCELLATION OF HEARING |
| 64 | 2 | 1/9/2024 | ORDER ON MOTION TO RESET FORECLOSURE SALE DATE |
| 63 | 2 | 1/9/2024 | NOTICE OF CANCELLATION OF HEARING |
| 62 | 2 | 1/4/2024 | NOTICE OF HEARING |
| 61 | 1 | 12/14/2023 | PAYMENT $50.00 RECEIPT #2023023218 |
| 60 | 7 | 12/14/2023 | MOTION TO RESET FORECLOSURE SALE |
| 59 | 1 | 2/14/2023 | SUGGESTION OF BANKRUPTCY |
| 58 | 1 | 2/2/2023 | PAYMENT $59.00 RECEIPT #2023001959 |
| 57 | 4 | 2/1/2023 | CERTIFICATE OF MAILING ORDER ON PLAINTIFFS MOTION TO RESET SALE |
| 56 | 3 | 2/1/2023 | NOTICE OF SALE |
| 55 | | 1/27/2023 | FORECLOSURE SALE SET FOR 03/03/2023 AT 11:00 AM IN EA/ |
| 54 | 2 | 1/26/2023 | ORDER ON PLAINTIFFS MOTION TO RESET FORECLOSURE SALE |
| 52 | 1 | 1/11/2023 | PAYMENT $50.00 RECEIPT #2023000577 |
| 51 | | 1/11/2023 | CIRC CIV REOPEN FILING FEE ASSESSED $50.00 |
| 50 | 8 | 1/10/2023 | MOTION TO RESET FORECLOSURE SALE |
| 49 | 5 | 1/10/2023 | NOTICE OF FILING BANKRUPTCY ORDER |
| 48 | 2 | 11/19/2021 | ORDER OF STAY DUE TO BANKRUPTCY AS TO ALL PENDING CLAIMS AND DIRECTING CLERK TO CLOSE FILE |
| 47 | 1 | 11/18/2021 | SUGGESTION OF BANKRUPTCY ((EMAILED J.A.)) |
| 46 | 3 | 11/10/2021 | PROOF OF PUBLICATION |
| 45 | 3 | 10/20/2021 | NOTICE OF SALE |
| 44 | | 10/8/2021 | FORECLOSURE SALE SET FOR 11/30/2021 AT 11:00 AM IN JC/ |
| 43 | 4 | 10/7/2021 | FINAL JUDGMENT OF FORECLOSURE - Recorded (OR.2615.912. / 2021055958) |
| 42 | Request | 10/6/2021 | NOTICE OF FILING- ORIGINAL NOTE AND MORTGAGE((RECEIVED & SENT TO RECORDS FOR STORAGE)) |
| 41 | 38 | 10/5/2021 | NOTICE OF FILING |
| 40 | 2 | 9/2/2021 | ORDER ON PLAINTIFFS MOTION FOR JUDICIAL DEFAULTS |
| 39 | 3 | 8/12/2021 | NOTICE OF HEARING |
| 38 | 2 | 8/10/2021 | AFFIDAVIT OF ATTORNEYS FEES AND COSTS |
| 37 | 1 | 8/10/2021 | AFFIDAVIT OF REASONABLE ATTORNEYS FEES AND COSTS |
| 36 | 27 | 8/10/2021 | MOTION FOR SUMMARY FINAL JUDGMENT IN FORECLOSURE |
| 35 | 4 | 7/22/2021 | RETURN OF SERVICE NONSERVED |
| 34 | 3 | 7/21/2021 | NOTICE OF HEARING |
| 33 | 5 | 7/20/2021 | AFFIDAVIT OF SERVICE- UNKNOWN TENANT |
| 32 | 4 | 7/20/2021 | AFFIDAVIT OF SERVICE- CARMEN BAEZA |
| 31 | 9 | 7/16/2021 | PLAINTIFFS MOTION FOR ENTRY OF JUDICIAL DEFAULT |
| 30 | 1 | 7/14/2021 | CLERKS DEFAULT |
| 29 | 5 | 7/14/2021 | MOTION FOR CLERK DEFAULT |
| 28 | 2 | 7/14/2021 | NOTICE OF DROPPING PARTY DEFENDANT |
| 27 | 5 | 7/13/2021 | AFFIDAVIT OF SERVICE- UNKNOWN TENANT #1 |
| 26 | 1 | 7/13/2021 | NOTICE OF APPEARANCE OF COUNSEL |
| 25 | 1 | 6/10/2021 | ORDER APPOINTING PROCESS SERVER |
| 23 | 4 | 6/3/2021 | AFFIDAVIT OF SERVICE- ITT COMMUNITY DEVELOPMENT CORP. |
| 22 | 3 | 5/27/2021 | NOTICE OF HEARING |
| 21 | 1 | 5/25/2021 | MOTION TO APPOINT SPECIAL PROCESS SERVER |

| SEQ# | IMAGE | DATE | |
|------|-------|------|---|
| 20 | 📄 2 | 5/14/2021 | CASE MANAGEMENT ORDER |
| 19 | 📄 1 | 5/14/2021 | PAYMENT $964.00 RECEIPT #2021007864 |
| 18 | 📄 4 | 5/13/2021 | CIVIL VALUE SHEET |
| 17 | 📄 3 | 5/13/2021 | SUMMONS PREPARED- UNKNOWN TENANT 2 |
| 16 | 📄 3 | 5/13/2021 | SUMMONS PREPARED- UNKNOWN TENANT 1 |
| 15 | 📄 3 | 5/13/2021 | SUMMONS PREPARED- UNKNOWN SPOUSE OF CARMEN BAEZA |
| 14 | 📄 3 | 5/13/2021 | SUMMONS PREPARED- ITT COMMUNITY DEVELOPMENT CORPORATION |
| 13 | 📄 3 | 5/13/2021 | SUMMONS PREPARED- CARMEN BAEZA |
| 12 | 📄 19 | 5/13/2021 | CERTIFICATION OF PHYSICAL POSSESSION OF NOTE |
| 11 | 📄 81 | 5/13/2021 | COMPLAINT |
| 10 | 📄 2 | 5/13/2021 | NOTICE OF LIS PENDENS - Recorded (OR.2563.56. / 2021026925) |
| 9 | 📄 3 | 5/13/2021 | COVER SHEET |
| 8 | | 5/13/2021 | CIRCUIT CIVIL FILING FEES (SUMMONS) ASSESSED $10.00 |
| 7 | | 5/13/2021 | CIRCUIT CIVIL FILING FEES (SUMMONS) ASSESSED $10.00 |
| 6 | | 5/13/2021 | CIRCUIT CIVIL FILING FEES (SUMMONS) ASSESSED $10.00 |
| 5 | | 5/13/2021 | CIRCUIT CIVIL FILING FEES (SUMMONS) ASSESSED $10.00 |
| 4 | | 5/13/2021 | CIRCUIT CIVIL FILING FEES (SUMMONS) ASSESSED $10.00 |
| 3 | | 5/13/2021 | LIS PENDENS DEPOSIT - FROM EPORTAL ASSESSED $4.00 |
| 2 | | 5/13/2021 | LIS PENDENS DEPOSIT - FROM EPORTAL ASSESSED $5.00 |
| 1 | | 5/13/2021 | HMSTRF $50,001 BUT LESS THAN $250,000 ASSESSED $905.00 |

# EXHIBIT "E"

Filing # 136058695 E-Filed 10/06/2021 04:49:59 PM

IN THE CIRCUIT COURT OF THE 7TH
JUDICIAL CIRCUIT IN AND FOR
FLAGLER COUNTY, FLORIDA
CASE NO.: 2021-CA-000250

U.S. BANK TRUST NATIONAL
ASSOCIATION, AS TRUSTEE OF THE
BUNGALOW SERIES IV TRUST,

        **Plaintiff,**

v.

CARMEN BAEZA; ET AL,

        **Defendants.**

_____/

## FINAL JUDGMENT OF FORECLOSURE

      **THIS ACTION** was heard before the Court on Plaintiff, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST,** Motion for Summary Final Judgment on **October 6, 2021.** On the evidence presented, **IT IS ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Final Judgment is **GRANTED** against all Defendants listed by name: CARMEN BAEZA; ITT COMMUNITY DEVELOPMENT CORPORATION; UNKNOWN TENANT #1 N/K/A JASMINE TROTTA; UNKNOWN TENANT #2 N/K/A DAVID TROTTA.

1.    **Amounts Due and Owing.**    The Plaintiff is due the following amounts from Defendants:

| | |
|---|---:|
| Principal due on the note secured by the mortgage foreclosed: | $ 224,697.12 |
| Accrued Interest from 05/01/2019 to 08/30/2021 | $ 29,817.98 |
| Per diem Interest @ $33.86 from 08/31/2021 to 10/06/2021 | $ 1,218.96 |
| Forbearance Principal | $ 26,710.95 |
| Late Charge | $ 960.72 |
| Force Placed Insurance | $ 6,462.89 |
| Attorneys' Fees | $ 3,175.00 |
| Attorneys' Costs | $ 1,598.04 |
| **GRAND TOTAL** | **$ 294,641.66** |

2.    **Interest**. The grand total amount referenced in Paragraph 1 shall bear interest from this date forward at the prevailing legal rate of interest 4.25% a year.

3.    Lien on Property. Plaintiff, **U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE BUNGALOW SERIES IV TRUST,** whose address is c/o Ghidotti Berger, LLP, 1031 North Miami Beach Blvd, North Miami Beach, FL 33162, holds a lien for the grand total sum specified in paragraph 1 herein. The lien of the Plaintiff is superior in dignity to any right, title, interest or claim of the defendant(s) CARMEN BAEZA; ITT COMMUNITY DEVELOPMENT CORPORATION; UNKNOWN TENANT #1 N/K/A JASMINE TROTTA; UNKNOWN TENANT #2

- 1 -

N/K/A DAVID TROTTA, and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them and the property will be sold free and clear of all claims of the defendants, with the exception of any assessments that are superior pursuant to Florida Statutes, Section 718.116. The Plaintiffs Lien encumbers the following described property in Flagler County, Florida:

**LOT 13, BLOCK 31, PALM COAST, MAP OF EASTHAMPTON, SECTION 34, ACCORDING TO MAP OR PLAT THEREOF AS RECORDED IN PLAT BOOK 11, PAGES 30-49 OF THE PUBLIC RECORDS OF FLAGLER COUNTY, FLORIDA**

**Property Address: 31 EAST DIAMOND DR., PALM COAST, FL 32164**

4. **Sale of the Property.** If the grand total amount with interest at the rate described in Paragraph 1 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on November 30,2021 at 11:00 A.M. to the highest bidder for cash, except as prescribed in Paragraph 7, at Clerk of Circuit and County , Kim C. Hammond Justice Center, 1769 E. Moody Blvd., Bldg. 1 Bunnell, FL 32110, Civil/Criminal Department 2ND Floor, after having first given notice as required by Section 45.031, Florida Statutes.

5. **Costs.** Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if plaintiff is not the purchaser of the property for sale, provided, however, that the purchaser of the property for sale shall be responsible for documentary stamps affixed to the certificate of title. If plaintiff is the purchaser, the Clerk shall credit plaintiff's bid with the total sum with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. If Plaintiff incurs additional expenses subsequent to the entry of this final judgment but prior to the sale date specified in paragraph 4 herein, Plaintiff may, by written motion serve on all parties, seek to amend this final judgment to include said additional expenses.

6. **Distribution of Proceeds.** On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the plaintiff's costs; second, documentary stamps affixed to the Certificate; third, plaintiff's attorneys' fees; fourth, the total sum due to the plaintiff, less the items paid, plus interest at the rate prescribed in paragraph 2 from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

7. **Right of Possession**. Upon filing of the Certificate of Sale, defendant(s) and all persons claiming under or against defendant(s) since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under Chapter 718 or Chapter 720, Fla. Stat., if any. Upon filing of the Certificate of Title, the person named on the Certificate of Title shall be let into possession of the property, subject to the provisions of the "Protecting Tenants at Foreclosure Act of 2009."

8. **Jurisdiction.** The Court retains subject matter jurisdiction of this action to enter further Orders that are proper including, without limitation, writs of possession and deficiency judgments. In particular, the Court retains subject matter jurisdiction to allow a supplemental post-judgment proceeding to re-foreclose against an omitted party and to resolve the issues discussed in paragraph

three (3).

9.    The Plaintiff may assignment the Judgment and credit bid by the filing of an assignment without further Order of the Court.

10.    **Attorneys' Fees**. The requested attorney's fee is a flat rate fee that the firm's client has agreed to pay in this matter. Given the amount of fee requested and the labor expended, the Court finds that a lodestar analysis is not necessary and that the flat fee is reasonable.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.**
**IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

(If the property being foreclosed on has qualified for the homestead tax exemption in the most recent approved tax roll, the final judgment shall additionally contain the following statement in conspicuous type.)

**IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND YOU DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, FLAGLER COUNTY COURTHOUSE, KIM C. HAMMOND JUSTICE CENTER, 1769 E. MOODY BLVD., BLDG. 1 BUNNELL, FL 32110 (TELEPHONE: (3407) 7423500), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.**

**IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY, YOU MAY CONTACT THE COMMUNITY LEGAL SERVICES OF MID-FLORIDA, 1105 US1 SOUTH, BUNNELL, FL 32110, (TELEPHONE: (800) 405-1417), TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT THE DADE COUNTY BAR ASSOCIATION LEGAL AID SOCIETY, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE. THE COMMUNITY LEGAL SERVICES OF MID-FLORIDA, 1105 US1 SOUTH, BUNNELL, FL 32110, (TELEPHONE: (800) 405-1417, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.**

**DONE AND ORDERED** in Chambers in Flagler County, Florida, this _____ day of October, 2021.

e-Signed 10/7/2021 6:06 PM 2021 CA 000250
_____
CIRCUIT JUDGE

*Copies furnished to <u>all</u> parties named on the service list:*

**SERVICE LIST**
**CASE NO.: 2021-CA-000250**

**GHIDOTTI |BERGER LLP**
*Attorneys for Plaintiff*
1031 North Miami Beach Blvd
North Miami Beach, FL 33162
Telephone: (305) 501.2808
Facsimile: (954) 780.5578
Fcpleadings@ghidottiberger.com

Carmen Baeza
C/O John Roberts, Esq.
John Roberts, Attorney and Counsellor at Law, P.A.
300 Interchange Blvd., Suite E
Ormond Beach, FL 32174
John@johnrobertsattorneyatlaw.com

ITT Community Development Corporation
C/O C T Corporation System
1200 South Pine Island Road
Plantation, FL 33324

Unknown Tenant #1 N/K/A Jasmine Trotta
31 East Diamond Drive
Palm Coast, FL 32164

Unknown Tenant #2 N/K/A David Trotta
31 East Diamond Drive
Palm Coast, FL 32164